**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **ADEAN HILL, JR.** | § | |
| | § | |
| **v.** | § | **NO. 4:26-CV-00025-ALM-BD** |
| | § | |
| **AMERICAN GENERAL LIFE INSURANCE COMPANY, *et al.*** | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

In this putative class action brought by plaintiff Adean Hill, Jr., under the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), and two provisions of a Texas statute governing the same subject matter, Tex. Bus. & Com. Code §§ 302.101, 305.053, Dkt. 1, defendant American General Life Insurance Company filed a verified plea in abatement under Texas Business and Commerce Code § 17.505, a provision of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.* Dkt. 43; *see* Dkts. 45 (declaration in contravention of the plea), 48 (response), 49 (reply). Based on a statement in the plea's certificate of conference, the court questioned counsel's compliance with Local Rule CV-7(h), which imposes a "meet and confer" requirement for opposed requests for relief of the type presented here, and called for advisories to be filed on that issue. Dkt. 44; *see* Dkts. 46 (American General's advisory), 47 (Hill's advisory).

The court will deny American General's plea in abatement. It will provide further guidance to counsel for both parties regarding compliance with Local Rule CV-7(h) as the case progresses.

## BACKGROUND

Hill's complaint asserts causes of action for (1) "Violation of 47 U.S.C. § 227(b) Telephone Consumer Protection Act Against all Defendants (On behalf of [Hill] and the TCPA Class)"; (2) "Violation of Texas Bus. & Com. Code § 305.053 Texas State TCPA Law (On behalf of [Hill] and the Texas Class)"; and (3) "Violation of Texas Bus. & Com. Code § 302.101 Failure to Obtain Texas Registration Certificate (On behalf of [Hill] and the Texas Class)." Dkt. 1 at 11–12 (line

breaks and boldface removed); *see id.* at 8 (proposed definitions of the "TCPA Class" and the "Texas Class"). The complaint seeks a class-certification order; appointment of Hill as class representative and his attorney as class counsel; declarations that the defendants' alleged actions, *see id.* at 1–8, violated the TCPA and Texas Business and Commerce Code §§ 302.101 and 305.053; "[a]n order awarding $5,000 per violation under Texas Bus. & Com. Code § 302.101"; "[a]n order awarding trebling damages to $1,500 per violation under 47 U.S.C. § 227(b)(3) and § 305.053(c)(1)"; an injunction against further violations of the laws on which Hill's causes of action are based; "[a]n award of damages, including punitive damages, and costs"; and "[s]uch other and further relief that the Court deems reasonable and just." *Id.* at 13. The complaint references the DTPA only once, in a paragraph that reads, in its entirety: "[Hill] may exercise a private right of action under Tex. Bus. & Com. Code § 17.50." *Id.* at 12.

Approximately seven months after he filed the complaint, Hill's counsel sent American General's counsel a "notice under Section 17.505(a) of the Texas Business and Commerce Code . . . in connection with [Hill's] claims under Chapter 302 of the Texas Business and Commerce Code, a violation of which is a false, misleading, or deceptive act or practice actionable under the [DTPA]. See Tex. Bus. & Com. Code § 302.303; id. § 17.50." Dkt. 43-1 at 3. The notice, which Hill's counsel sent to American General's counsel by email, *see id.* at 2, stated that it was "given as a matter of caution and to preserve [Hill's] right to recover attorneys' fees and expenses, without conceding that such notice is a prerequisite to any claim [Hill] asserts." *Id.* at 3.

After describing Hill's complaint under the TCPA and Texas Business and Commerce Code §§ 302.101 and 305.053, the notice stated that, "[u]nder Section 302.303, American General's violation of Chapter 302 is a false, misleading, or deceptive act or practice actionable under the DTPA." *Id.* The notice also included the following paragraphs:

> **2. Amount of economic damages.**
>
> For each violation described above, [Hill] is entitled to statutory damages of the greater of $500 or his actual damages under 47 U.S.C. § 227(b)(3) and Tex. Bus. & Com. Code § 305.053, increased to the greater of $1,500 or three times his actual damages for each knowing or willful violation. For American General's violation of

> Chapter 302, [Hill] is entitled to his actual damages — which the trier of fact may increase to three times that amount — together with court costs and reasonable and necessary attorneys' fees under Tex. Bus. & Com. Code §§ 302.303 and 17.50, and a civil penalty of not more than $5,000 for each violation under Tex. Bus. & Com. Code § 302.302. The aggregate amount of [Hill's] damages and civil remedies is a function of the number of violations, which will be established through discovery.
>
> **3. Damages for mental anguish.**
>
> [Hill] does not presently seek damages for mental anguish.
>
> **4. Expenses, including attorneys' fees, reasonably incurred.**
>
> As of the date of this letter, [Hill] has reasonably incurred attorneys' fees of not less than $91,662.50 and expenses of $485.00 in asserting these claims, and continues to incur fees and expenses as the litigation proceeds.
>
> **5. Opportunity to respond.**
>
> Section 17.505 affords American General the opportunity, within 60 days after receipt of this notice, to tender a written offer of settlement and, if applicable, an offer to pay [Hill's] reasonable and necessary attorneys' fees. [Hill] will consider any such response in accordance with the statute.

*Id.* at 3–4. The final paragraph of the notice stated: "Nothing in this letter waives, limits, or releases any claim, right, or remedy of [Hill], and [Hill] reserves all of them, including his position that pre-suit notice was not required as to one or more of his claims." *Id.* at 4.

Eleven days later, American General's counsel responded to the email message from Hill's counsel transmitting the § 17.505(a) notice, stating American General's position that abatement was the proper remedy for failure to provide the notice the DTPA requires and proposing that both parties sign a joint motion for abatement. Dkt. 43-2 at 2. Hill's counsel responded the same day, stating that he would agree to abate only the § 302.101 claim, rather than the entire action, explaining his position that "Section 17.505's notice requirement reaches that claim alone. The Section 302.101 claim is subject to the DTPA by operation of Section 302.303; Plaintiff's other claims are not." Dkt. 43-3 at 2. The email message concluded: "If American General instead intends to seek abatement of the entire action and a stay of all deadlines, [Hill] does not consent, and American General should present that as a contested motion, which [Hill] will oppose." *Id.* Three days later, American General's counsel responded to Hill's counsel, citing cases supporting

abatement of entire cases, rather than claims within cases. Dkt. 43-4 at 2. It concluded by stating that, "if [Hill] insists on opposing abatement of the entire suit as required by the law, please let me know your availability to confer by phone as required by the Local Rules." *Id.*

A few days later, Hill noticed a deposition of a corporate representative of American General under Federal Rule of Civil Procedure 30(b)(6). Dkt. 43-5. The next day, American General filed its plea in abatement. Dkt. 43. The plea asserted, among other things, that

> [i]t is undisputed that at least one of Mr. Hill's claims is actionable through the [DTPA] that requires presuit notice under Section 17.505(a) of the Texas Business and Commerce Code. It is further undisputed that Mr. Hill never provided that presuit notice. In fact, Mr. Hill only provided a letter purporting to provide the notice required by Section 17.505(a) on August 14, 2026, after this action had been pending for nearly eight months.

*Id.* at 1. The plea requested

> an order (1) requiring Mr. Hill to serve compliant notice under Section 17.505 within 14 days of the Court's order or the case will be dismissed, (2) confirming that this entire action is abated and will remain in abeyance until the 60th day after Mr. Hill provides such compliant notice, and (3) declaring that all discovery actions taken during the abatement period, including Mr. Hill's unilateral Rule 30(b)(6) Notice of Deposition served on September 1, 2026, are legal nullities and unenforceable.

*Id.* at 10. The plea's certificate of conference referenced the attorneys' email exchange and stated that "Mr. Hill did not provide a date and time to confer in response" to the final message in that chain. *Id.* at 11.

The next day, the court issued an order reminding the parties of their obligation to confer on opposed matters. Dkt. 44. The order began by stating that, during a "case-management conference in this case, the court informed the parties that, given their earlier interactions, it would 'be looking for compliance with [Local Rule] CV-7(h)' as the case progressed," referencing a minute entry "confirm[ing] that the court would 'require strict compliance with Local Rule CV-7(h).'" *Id.* at 1. The order noted that the court would consider the plea in abatement along with "any response, reply, and sur-reply that may be filed in the ordinary course." *Id.* But it also required the parties to file advisories indicating, in connection with the plea, "(1) whether each party's counsel complied

with Rule CV-7(h); (2) if either party's counsel did not comply with that rule, any facts that might justify the non-compliance; and (3) what remedy is warranted for any noncompliance." *Id.* at 2.

The same day the court issued that order, American General's counsel sent Hill's counsel another email message. The message stated:

> It is improper for [Hill] to unilaterally notice American General's Rule 30(b)(6) Deposition when this entire action should be in abatement and any actions, including discovery, are legal nullities. Given [Hill's] unilateral notice, American General had no choice but to raise this issue in its Verified Plea in Abatement. I'm happy to confer by phone and explain American General's position that discovery is suspended during abatement. Please let me know your availability next week.

Dkt. 48-2 at 8.

One week after American General filed its plea, Hill's counsel sent American General's counsel a second notice "under Section 17.505(a)." Dkt. 48-2 at 5. That notice "follow[ed], and d[id] not withdraw," the earlier one. *Id.* And like its predecessor, it was "given as a matter of caution and without conceding that pre-suit notice is a prerequisite to any claim [Hill] asserts, or that abatement of any claim other than the claim under Chapter 302 is warranted." *Id.; see id.* at 6 (reiterating Hill's "position that pre-suit notice was not required as to one or more of his claims"). It reasserted several points that likewise appeared in the first notice but added some information, such as statements regarding the putative class action. Its remedial paragraphs read as follows:

> **2. Amount of economic damages.**
>
> [Hill's] actual economic damages arising from the conduct described in the [first] notice are $0.00. In addition, and as remedies provided by statute for the single call at issue, [Hill] seeks: (a) statutory damages of $1,500 under 47 U.S.C. § 227(b)(3), reflecting $500 trebled for American General's knowing or willful violation; (b) statutory damages of $1,500 under Tex. Bus. & Com. Code § 305.053, reflecting $500 trebled for the knowing or willful violation; and (c) a civil penalty of $5,000 under Tex. Bus. & Com. Code § 302.101, for American General's violation of Chapter 302, which is made actionable under the DTPA by Section 302.303. The amount Plaintiff seeks as to himself individually for economic damages and statutory civil remedies is $8,000.00.
>
> **3. Damages for mental anguish.**
>
> Plaintiff does not seek damages for mental anguish.

> **4. Expenses, including attorneys' fees, reasonably incurred.**
>
> As of the date of this letter, [Hill] has reasonably incurred attorneys' fees of not less than $100,995.50 and expenses of $485.00 in asserting these claims, and continues to incur fees and expenses as the litigation proceeds.

*Id.* at 6. Hill's attorney transmitted the second notice to American General's attorney through an email message responding to the message from American General's attorney from the week before, stating: "Please see the attached DTPA Notice. Also, I am following up to see when you are available to meet and confer on the phone?" Dkt. 48-2 at 8.

Two days later, Hill's attorney filed a declaration in contravention of American General's plea in abatement. Dkt. 45. After summarizing the second notice's paragraph regarding the null amount of economic damages, *id.* at 2, the declaration stated that Hill's § 302.101 claim "is the only claim a violation of which is made actionable under the [DTPA], by operation of Tex. Bus. & Com. Code § 302.303" and that Hill "does not consent to abatement of the entire action. It is [Hill's] position that any abatement extends at most to [Hill's] claim under Chapter 302," *id.* at 3.

Hill timely responded to American General's plea, arguing, among other things, that the plea was based on a false premise: "that [Hill] was required to give presuit notice under Section 17.505 of the Texas Business and Commerce Code before filing this action." Dkt. 48 at 1. On that point, the response stated that "[t]he prerequisite" mentioned in § 17.505(a) "attaches to a suit seeking the damages recoverable under Section 17.50(b)(1), not to every claim that touches the DTPA," and that "[Hill's] Chapter 302 claim does not seek Section 17.50(b)(1) damages. It seeks the civil penalty that Chapter 302 itself provides: 'A person who violates this chapter is subject to a civil penalty of not more than $5,000 for each violation.' Tex. Bus. & Com. Code § 302.302(a)." Dkt. 48 at 7. The response went on to assert that, "[b]ecause the penalty is a Chapter 302 remedy rather than a claim for Section 17.50(b)(1) damages, a plaintiff who elects [the penalty] does not carry the requirements that attend a traditional DTPA damages claim" and that "a claim that does not seek Section 17.50(b)(1) damages does not trigger a prerequisite that is limited, by its own words, to a suit 'seeking damages under Subdivision (1) of Subsection (b) of Section 17.50.'" *Id.* at 8 (quoting Tex. Bus. & Com. Code § 17.505(a)). The response concluded that point (which was

just one among several others Hill made) with the assertion that § 302.303 "makes the DTPA's remedies available" but "does not compel a plaintiff to seek Section 17.50(b)(1) damages" and "does not convert a claim for the Section 302.302(a) penalty into one that [seeks § 17.50(b)(1) damages]." *Id.* at 9; *see also id.* at 11 (adding that "[Hill] seeks no treble damages under the DTPA; the enhanced amounts he seeks arise under 47 U.S.C. § 227(b)(3) and Tex. Bus. & Com. Code § 305.053, and his Chapter 302 remedy is a civil penalty").

The same day Hill filed his response to American General's plea, both he and American General filed advisories responsive to the court's order regarding compliance with Local Rule CV-7(h). Each advisory accused opposing counsel of failing to comply with the rule's requirements.

Hill's advisory stated that his attorney complied, and that American General's attorney did not comply, with Local Rule CV-7(h) in connection with American General's plea in abatement. Dkt. 47 at 1–2. The advisory also referenced an order that the court previously issued in this case requiring a face-to-face meeting, beyond what Local Rule CV-7(h) requires, in connection with a specific discovery dispute that arose earlier and is no longer live. *Id.* at 2–3, 5, 9 (referencing Dkt. 38). It noted that the parties eventually met by videoconference the day before Hill filed his response to the plea, *id.* at 7, describing that day as "the first date American General's counsel made available," *id.* at 9. It stated that the court could deny the plea for noncompliance with the rule or, "at a minimum[,] . . . not consider the discovery-related relief the [plea] requests." *Id.* at 2. But "[b]ecause the parties have since conferred and the remaining issues are joined in [Hill's] opposition," Hill stated that he "has no objection to the Court deciding the [plea] on its merits in the ordinary course." *Id.* at 10. The advisory attached a declaration of Hill's counsel, which in turn attached the email messages this order has already described plus several others. *Id.* at 15–35.

American General's advisory asserted that Hill (which the court understands to be a reference to Hill's attorney, rather than Hill himself) "did not comply with Rule CV-7(h) when he failed to provide availability in response to American General's request to confer regarding its Plea." Dkt. 46 at 3. It also leveled the accusation that Hill, "a serial TCPA litigant," "does not care that the case law forecloses his position, he only cares about increasing litigation costs to turn around

and claim them as recoverable attorneys' fees." *Id.* The advisory described Hill's case as "meritless." *Id.* Then, turning back to the questions the court asked, it stated that "Hill cannot justify noncompliance because this is not the first time he has failed to confer in violation of the Local Rules," describing past instances of noncompliance with Rule CV-7(h), and requested an award of attorneys' fees. *Id.* at 4. The advisory then elaborated on the three points responsive to the court's order but added numerous assertions about the merits of the case and the parties' substantive positions on abatement. *Id.* at 5–20. The advisory embedded snippets of email messages between Hill's and American General's attorneys and ended with a suggestion that the court consider revoking the pro hac vice admission of Hill's attorney. *Id.* at 6–20.

The next week, American General filed its reply in support of its plea in abatement. Dkt. 49. The reply began with a recap of the instances in which American General contends that Hill's attorney failed to comply with Local Rule CV-7(h). *Id.* at 1. It then argued that each of Hill's § 17.505(a) notices was deficient and that, to recover under § 302.303, Hill had to seek damages under § 17.50(b)(1). *Id.* at 2–4. It asked the court to recognize that the case is automatically abated or, alternatively, to order an abatement. *Id.* at 4–5.

## LAW

### I. Sections 17.505 and 17.50

Part of the DTPA, Texas Business and Commerce Code § 17.505 provides:

> (a) As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant. During the 60-day period a written request to inspect, in a reasonable manner and at a reasonable time and place, the goods that are the subject of the consumer's action or claim may be presented to the consumer.
>
> (b) If the giving of 60 days' written notice is rendered impracticable by reason of the necessity of filing suit in order to prevent the expiration of the statute of limitations or if the consumer's claim is asserted by way of counterclaim, the notice provided for in Subsection (a) of this section is not required, but the tender provided

> for by Subsection (d), Section 17.506 of this subchapter may be made within 60 days after service of the suit or counterclaim.
>
> (c) A person against whom a suit is pending who does not receive written notice, as required by Subsection (a), may file a plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the suit is pending. This subsection does not apply if Subsection (b) applies.
>
> (d) The court shall abate the suit if the court, after a hearing, finds that the person is entitled to an abatement because notice was not provided as required by this section. A suit is automatically abated without the order of the court beginning on the 11th day after the date a plea in abatement is filed under Subsection (c) if the plea in abatement:
>
> > (1) is verified and alleges that the person against whom the suit is pending did not receive the written notice as required by Subsection (a); and
> >
> > (2) is not controverted by an affidavit filed by the consumer before the 11th day after the date on which the plea in abatement is filed.
>
> (e) An abatement under Subsection (d) continues until the 60th day after the date that written notice is served in compliance with Subsection (a).

*See id.* § 17.45(4) (defining "consumer"). Section 17.505(a)'s notice requirement applies in federal court under the doctrine of *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938). *See Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1430 (5th Cir. 1992); *Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 482 n.1 (E.D. Tex. 2021).

Section 17.50, another provision of the DTPA, authorizes "[a] consumer" to "maintain an action where" any of several specified activities "constitute a producing cause of economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50(a). Section 17.50(b)(1), the "Subdivision" referenced in § 17.505(a), states:

> (b) In a suit filed under this section, each consumer who prevails may obtain:
>
> > (1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages.

*See* Tex. Bus. & Com. Code § 17.50(e) (providing that, "[i]n computing additional damages under Subsection (b), attorneys' fees, costs, and prejudgment interest may not be considered").

Section 17.50(b) goes on to authorize other remedies, including orders enjoining acts or failures to act in violation of the DTPA; "orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter"; and "any other relief which the court deems proper." *Id.* § 17.50(b)(2)–(4). Section 17.50(d) provides that "[e]ach consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees." And section 17.50(h) states:

> Notwithstanding any other provision of this subchapter [i.e., subchapter E, the DTPA], if a claimant is granted the right to bring a cause of action under this subchapter by another law, the claimant is not limited to recovery of economic damages only, but may recover any actual damages incurred by the claimant, without regard to whether the conduct of the defendant was committed intentionally. For the purpose of the recovery of damages for a cause of action described by this subsection only, a reference in this subchapter to economic damages means actual damages. In applying Subsection (b)(1) to an award of damages under this subsection, the trier of fact is authorized to award a total of not more than three times actual damages, in accordance with that subsection.

*See* Tex. Bus. & Com. Code § 302.303(a)–(b) (separate statute addressing telephone solicitation providing that "[a] violation of this chapter is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and that "[a] public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce this chapter"); *see also id.* § 302.302(a) (providing that "[a] person who violates this chapter is subject to a civil penalty of not more than $5,000 for each violation").

## II. Local Rule CV-7(h)

The court's Local Rule CV-7(h) imposes a "meet and confer" requirement for opposed motions that calls for,

> at a minimum, a personal conference, by telephone or in person, between an attorney for the movant and an attorney for the non-movant. . . . In the personal conference, the participants must give each other the opportunity to express his or her views concerning the disputes. The participants must also compare views and have a discussion in an attempt to resolve their differing views before coming to

> court. Such discussion requires a sincere effort in which the participants present the merits of their respective positions and meaningfully assess the relative strengths of each position. . . . Except as otherwise provided by this rule, a request for court intervention is not appropriate until the participants have met and conferred, in good faith, and concluded, in good faith, that the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve. . . . For opposed motions, correspondence, e-mails, and facsimile transmissions do not constitute compliance with the substantive component [of the requirement] and are not evidence of good faith. . . . A party may file an opposed motion without the required conference only when the non-movant has acted in bad faith by failing to meet and confer.

## DISCUSSION

### I. Applicability of the DTPA's Pre-Suit Notice and Abatement Provisions

A plaintiff is the master of his complaint. *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025). That means he can choose what claims to assert or not assert and what relief to seek or not seek. *Id.*; *Dennis v. City of Philadelphia*, 19 F.4th 279, 291 (3d Cir. 2021); *Teutscher v. Woodson*, 835 F.3d 936, 956 (9th Cir. 2016). In other words, "it is the party suing, not the party sued, who enjoys the right to frame the claims asserted in a complaint." *Haley v. City of Boston*, 657 F.3d 39, 49 (1st Cir. 2011).

Those choices come with trade-offs and consequences. A state-court plaintiff who could sue, and potentially recover, under federal law might choose not to assert a federal claim to prevent the defendant from removing the case to federal court. *See Royal Canin*, 604 U.S. at 35. And a federal-court plaintiff who could seek several forms of relief might choose, for a variety of reasons, to limit his remedial request. *See, e.g.*, *Teutscher*, 835 F.3d at 956–57.

The complaint in this case reflects Hill's exercise of those types of choices. He sued in federal court under a federal statute and two provisions of state law, securing a federal forum for each of his claims. Dkt. 1; *see* 28 U.S.C. §§ 1331, 1367. But he did not seek all of the relief he might have. As relevant here, he did not seek the type of relief described in § 17.50(b)(1). Although his complaint mentions several statutory provisions, § 17.50(b)(1) is not among them. Nor does the complaint mention "economic damages," Tex. Bus. & Com. Code § 17.50(b)(1), "mental anguish," *id.*, or "actual damages," *id.* § 17.50(h).

American General maintains that Hill's only avenue to recovery for a violation of § 302.101 is through the DTPA by way of § 302.303, which provides that a "private right or remedy prescribed by [the DTPA] may be used to enforce this chapter." *See* Dkt. 49 at 2–3. For that reason, American General suggests that Hill's suit must be one "seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter," Tex. Bus. & Com. Code § 17.505(a), despite the absence in the complaint of any request for such relief.

That position might have been well taken under a predecessor to current § 17.505 that required pre-suit notice "[i]n an action brought under Section 17.50 of this subchapter." Act of May 23, 1977, 65th Leg., R.S., ch. 216, § 6, 1977 Tex. Gen. Laws 600, 604 (former Tex. Bus. & Com. Code § 17.50A (1977)). But the Texas Legislature long ago amended the DTPA's pre-suit notice provision to apply only to suits "seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter," Act of June 13, 1979, 66th Leg., R.S., ch. 603, § 5, 1979 Tex. Gen. Laws 1327, 1330 (former Tex. Bus. & Com. Code § 17.50A (1979)), the language that appears in § 17.505(a) today. It did so, presumably, with the knowledge that the change in wording would alter the provision's scope. *See Brown v. State*, 915 S.W.2d 533, 536 (Tex. App.—Dallas 1995) (explaining that, "[w]hen the Legislature amends a statute, [courts] presume the Legislature meant to change the law . . . and give effect to the intended change"), *aff'd*, 943 S.W.2d 35 (Tex. Crim. App. 1997). That scope is now limited based on the type of DTPA relief a plaintiff seeks. Tex. Bus. & Com. Code § 17.505(a); *see Am. Online, Inc. v. Williams*, 958 S.W.2d 268, 271–72 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (reflecting application of § 17.505 in a suit for § 17.50(b)(1) damages); *Sunshine Datsun, Inc. v. Ramsey*, 680 S.W.2d 652, 653–54 (Tex. App.—Amarillo 1984, no writ) (reflecting application of the 1979 version of former § 17.50A in another such suit), *disapproved of on other grounds*, *Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992).

Hill's complaint does request "[a]n award of damages, including punitive damages, and costs" and "[s]uch other and further relief that the Court deems reasonable and just." Dkt. 1 at 13. Standing alone, those requests could be viewed as broad enough to encompass the types of damages referenced in § 17.50(b)(1) as modified by § 17.50(h) by virtue of Hill's invocation of § 302.303.

*See* Tex. Bus. & Com. Code § 17.50(h) (making "economic damages" in § 17.50(b)(1) a reference to "actual damages" in a case in which "a claimant is granted the right to bring a cause of action under this subchapter by another law"). And if Hill had in fact requested one or both of those types of damages, § 17.505(a)'s notice requirement would apply.

But just because the request could be viewed that broadly does not mean it would be accurate to do so, and Hill's subsequent filings confirm that the complaint did not request any damages described in § 17.50(b)(1)—whether standing alone or, as it is in this case, as modified by § 17.50(h). Although the first § 17.505(a) notice mentioned that Hill "[wa]s entitled to" certain categories of damages, including "actual damages," Dkt. 48-2 at 3, it is best understood in context as a recitation of what damages were available, rather than what damages Hill was pursuing. As noted, the complaint did not request actual damages, *see* Dkt. 1 at 13; the first notice stated that "[t]he aggregate amount of [Hill's] damages and civil remedies is a function of the number of violations, which will be established through discovery," Dkt. 48-2 at 3; and the second, more specific notice made it clear that Hill was seeking only statutory (as opposed to actual) damages and penalties, Dkt. 48-2 at 6 (specifying the amounts of statutory damages and penalties Hill is seeking and confirming that Hill is seeking "$0.00" economic damages). Additionally, at every turn, Hill has maintained his position that § 17.505(a)'s notice requirement was never triggered. The first notice stated that it was "given as a matter of caution" and "without conceding" that notice "is a prerequisite to any claim [Hill] asserts." *Id.* at 2. The second notice included those same caveats. *Id.* at 5. And Hill's response to American General's plea in abatement argued that § 17.505(a) notice was not required because the complaint did not seek the type of damages described in § 17.50(b)(1). Dkt. 48 at 7–9.

True, Hill made alternative arguments that would become relevant if the court rejected his position that § 17.505(a) is inapplicable here. *E.g.*, *id.* at 4–7 (arguing that a plea triggers abatement only if, unlike in this case, it is filed after an answer). And standing alone, several of his earlier assertions could be viewed as concessions that § 17.505(a) does apply, supporting the reasonableness of American General's conclusion that a plea in abatement was warranted. *E.g.*,

Dkt. 45 at 2 (stating that "[Hill] has served written notice under Section 17.505(a) of the Texas Business and Commerce Code").

Additional conduct by Hill, and the sequencing of his arguments in response to American General's plea, could bolster that view. It is unclear, for instance, why Hill sent protective § 17.505(a) notices at all. It is also unclear what Hill thought he would accomplish by filing a § 17.505(a) notice long after the suit was filed even though the statute requires pre-suit notice. Tex. Bus. & Com. Code § 17.505(a). And it is at best confusing that Hill's response to American General's plea argued that the notices were sufficient before it argued that they were never required in the first place. *See* Dkt. 48 at 2–9.

But a party is entitled to make alternative arguments, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 328 (2010); *Travelers Indem. Co. v. Citgo Petrol. Corp.*, 166 F.3d 761, 769 (5th Cir. 1999); *see* Dkt. 48 at 9 (asserting that "[a] party who contests a prerequisite while prudently satisfying it does not concede that it applies"), and courts do not read words—whether in statutes or in parties' filings—in isolation, *e.g.*, *United States v. Palomares*, 52 F.4th 640, 642 (5th Cir. 2022) (explaining the point in the context of statutory interpretation); *Bruno v. Ford*, No. 21-20204, 2021 WL 4734412, at *3 (5th Cir. Oct. 11, 2021) (explaining that a district court should address all, rather than just some, of what a party argues). Nor do courts fault litigants for organizing their filings in counterintuitive ways. Hill's consistent assertions that he was not conceding § 17.505(a)'s applicability in this case, Dkt. 45 at 2; Dkt. 47 at 9, 12; Dkt. 48 at 1–2; Dkt. 48-2 at 2, 5, even if those assertions were sometimes buried in alternative arguments, cannot properly be ignored.

The parties debate whether Hill's failure to seek damages under § 17.50(b)(1) dooms his § 302.101 claim or prevents him from recovering attorneys' fees and costs. Dkt. 48 at 7–9 (arguing that private litigants like Hill can recover civil penalties for violations of § 302.101); Dkt. 49 at 2–3 (arguing that private plaintiffs can enforce § 302.101 only through the DTPA). Those disputes need not be resolved at this point; if American General is right that Hill's failure to seek a specific category of DTPA damages means that he may not proceed at all under one or more of his causes

of action or may not recover some of the relief he seeks, Hill will have to live with the consequences of a decision he made as the master of his complaint.

For now, the question is whether § 17.505(a) notice was required. It was not. Because Hill did not file a complaint "seeking damages under Subdivision (1) of Subsection (b) of Section 17.50," Tex. Bus. & Com. Code § 17.505(a), the "prerequisite to filing a suit" that § 17.505(a) mentions has no application here. American General's plea in abatement fails for that reason, and the court need not reach the parties' other arguments presented in the plea and associated filings.

**II. Compliance with Local Rule CV-7(h)**

The parties' lengthy advisories in response to the court's order regarding compliance with Local Rule CV-7(h) reflect several things, including the contentiousness of the attorneys' relationship and a significant expenditure of time—which, "in the American legal profession, . . . is tightly tied to money," *Powell v. Nelnet, Inc.*, No. 4:23-CV-00783-SDJ-BD, 2025 WL 1584694, at *1 (E.D. Tex. June 4, 2025)—on a question of rule compliance that would ideally never have arisen. Each attorney accuses the other of wrongdoing; neither acknowledges the possibility that there might have been something more that he could have done to ensure that a meeting or phone conversation happened before the plea was filed.

Hill has no objection to the court ruling on the merits of the plea without penalizing American General's attorney for his alleged role in non-compliance with Local Rule CV-7(h). American General asks the court to shift fees in its direction based on the alleged non-compliance of Hill's attorney, but its plea in abatement is not well taken for the reasons just explained.

In light of all that, the court will not spend its own time taking further action against either party's attorney at this stage. It will instead reiterate its expectation that counsel comply with all applicable rules, including Local Rule CV-7(h), as this case progresses. Many matters, including the scheduling of depositions and reasonable extensions of discovery-response deadlines, can and should be resolved through cooperative communication between attorneys. Most lawyers who practice in this court are able to do such things without any need for judicial inquiry or comment.

It is evident from the advisories that the parties' able counsel are good at using email. It is also evident that they are less good at finding times to speak by phone or in person, as Local Rule CV-7(h) requires. The problem may be busy schedules, personal animosity, overconfidence in clients' positions, some combination of those things, or something else entirely. Whatever the reason, if that particular communication skill does not improve, any attorney at fault should expect to receive a show-cause order. Any subsequent sanctions order may include not only shifting of attorneys' fees, but also a monetary award based on the time the court has had to expend policing compliance with a simple requirement. *See, e.g.*, *Nogess v. Poydras Ctr., LLC*, No. CV 16-15227, 2017 WL 396307, at *13–15 (E.D. La. Jan. 30, 2017) (citing a 1982 study sponsored by the Rand Corporation Institute for Civil Justice and an inflation calculator that, taken together, currently support awarding more than $2,050 per hour for a federal court's wasted time); Davis, J., Judge-Specific Information, https://txed.uscourts.gov/?q=judge/magistrate-judge-bill-davis (explaining that "Judge Davis expects attorneys to demonstrate compliance with the Eastern District of Texas Local Rules, including Rules AT-3 (standards of practice to be observed by attorneys) and CV-7(h) ('meet and confer' requirement) through civility, professionalism, and candor").

## CONCLUSION

It is **ORDERED** that American General's plea in abatement, Dkt. 43, is **DENIED**.

So **ORDERED** and **SIGNED** this 8th day of October, 2026.

Bill Davis
United States Magistrate Judge